IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| Lakefront Investors LLC; Trustcapital | | |
| Investments, LLC; Equity Trust Company | * | |
| Custodian FBO Nicholas John Lazarchick | | |
| IRA and Nicholas John Lazarchick (TTEE); | * | |
| CJR Duck Associates LLC; and Nicholas J. | | |
| Lazarchick | * | Civil Action Nos.: |
| | | RDB-12-0326, 12-0327, |
| Appellants, | * | 12-0328 |
| | | Bankruptcy Nos.: |
| | * | DWK-08-14229, 08-217, |
| v. | | 09-22084, 09-467 |
| | * | |
| Charles Vernon Clarkson, Janet Ann Sydnor, | * | |
| and Michael G. Rinn, Trustee | | |
| | * | |
| Appellees. | | |
| | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

This case is before this Court on appeal from four Orders of the United States

Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"), which resulted in

the dismissal of the Chapter 11 cases of the Appellees Charles Vernon Clarkson and Janet

Ann Sydnor (together, the "Appellees" or the "Debtors"). The Appellants, Lakefront

Investors LLC, TrustCapital Investments, LLC, Nicholas John Lazarchick, and CJR Duck

Associates LLC (together, the "Appellants" or the "Creditors"), challenge the following four

Orders from the Bankruptcy Court: (1) the Order Dismissing Chapter 11 Cases on Request

of a Party in Interest (the "Dismissal Order");[1] (2) the Order Vacating Consent Order of Consolidation (the "Deconsolidation Order");[2] (3) the dismissal of Ms. Sydnor's adversary proceeding (the "Adversary Dismissal Order");[3] and (4) the remand of Mr. Clarkson's adversary proceeding to the Circuit Court for Somerset County (the "Remand Order").[4] Because the Debtors' cases were dismissed, the Bankruptcy Court also entered an Order imposing on each Debtor a one-year bar to refiling for bankruptcy.[5]  Because this Order relates to the Dismissal Order, this Court considers it in conjunction with the four appealed orders.

The main issue on appeal is the Bankruptcy Court's decision to dismiss the Debtors' Chapter 11 cases pursuant to 11 U.S.C. § 1112(b).  The Creditors contend that the Bankruptcy Court should have instead converted the cases to a Chapter 7 bankruptcy proceeding,[6] and that in dismissing them the court erred as to both its conclusions of law and its factual findings.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1), which extends jurisdiction to the United States District Courts to hear appeals from the final judgments, orders, and decrees of the United States Bankruptcy Courts.  The

---

[1] The Dismissal Order was entered under docket number DWK-08-14229.  It is now associated with civil case number RDB-12-0328.

[2] The Deconsolidation Order was entered under docket number DWK-08-217.  It is now associated with civil case number RDB-12-0327.

[3] The Adversary Dismissal Order was entered under docket number DWK-08-217.  It is now associated with civil case number RDB-12-0327.

[4] The Remand Order was entered under docket number DWK-09-0467.  It is now associated with civil case number RDB-12-0326.

[5] *See* Official Transcript 38:19-39:6, Case No. RDB-12-0328, ECF No. 5.  The Order Imposing Bar to Refiling was entered under docket number DWK-08-14229.

[6] The relief provided under Chapter 7, 11 U.S.C. §§ 701 *et seq.*, is liquidation.  In a Chapter 7 bankruptcy case, the bankruptcy trustee liquidates the debtor's assets, which involves selling the debtor's nonexempt property and distributing the proceeds from that sale to the creditors.  *See, e.g.,* 11 U.S.C. §§ 725, 726 (governing the disposition and distribution of property of the estate under Chapter 7).

parties have fully briefed the issues, and this Court held a hearing on October 17, 2012 pursuant to Local Rule 105.6 (D. Md. 2010) and Rule 8012 of the Federal Rules of Bankruptcy Procedure.  For the reasons stated below, the Dismissal Order of the United States Bankruptcy Court is REVERSED and the Debtors' cases are REMANDED to the Bankruptcy Court with instructions to enter an order converting them to Chapter 7, which will result in the liquidation of the Debtors' assets.  The four other Orders are related to the Dismissal Order and necessarily fall with it.  Accordingly, the Deconsolidation Order, the Adversary Dismissal Order, the Remand Order, and the Order Imposing Bar to Refiling are also REVERSED.

## BACKGROUND AND PROCEDURAL HISTORY

### I.        The Debtors and Creditors in This Case

Janet Ann Sydnor and Charles Vernon Clarkson (together, the "Appellees" or "Debtors") are "watermen"—they engage in aquaculture activities[7] on the Eastern Shore of Maryland.  *See, e.g.*, Janet Sydnor's Chapter 12 Voluntary Petition, Mar. 27, 2008, Case No. DWK-08-14229, ECF No. 1.  Together they own two real properties: the Cove Road Property, located at 23341 and 23349 Cove Road in Chance, Maryland (Somerset County); and the Taylors Island Property, located at 3946 Robinson Neck Road, Taylors Island, Maryland (Dorchester County).[8]

---

[7] Aquaculture activities involve "raising for market" any species of fish, shrimp, lobsters, urchins, seaweed, shellfish, or other aquatic species or products of such species.  11 U.S.C. § 101(7A).

[8] Appellants' Br., Case No. RDB-12-0326, ECF No. 5, at 6-7.  In their response brief, the Appellees concede to the factual summary presented in the Brief of the Appellants.  Appellees' Br., Case No. RDB-12-0326, ECF No. 14, at 5.

Lakefront Investors LLC; TrustCapital Investments, LLC; Nicholas John Lazarchick, who is suing in his capacity as Trustee for the Equity Trust Company; and CJR Duck Associates LLC (together, the "Appellants" or "Creditors") are creditors in this case. During a period from 2005 to 2007, the Creditors made three separate loans to the Debtors. Their first loan was made on November 30, 2005 for $562,500.00 (the "Cove Road Loan"). This loan was secured by the Cove Road Property and used to satisfy preexisting mortgages on the Cove Road Property. Appellants' Br., Case No. RDB-12-0326, ECF No. 5, at 6. The Cove Road Loan matured on November 20, 2006. *Id.* at 7.

On February 25, 2006, the Creditors made a loan to the Debtors in the amount of $1,250,000.00 (the "Taylors Island Loan"). The Debtors used this loan to purchase the Taylors Island Property, and the loan was secured by that property. *See* Mem. of Decision Appointing Chapter 11 Trustee, Case No. DWK-08-14229, ECF No. 176, at 7. The Taylors Island Loan matured on February 25, 2007. Appellants' Br. 7.

The third loan to the Debtors issued on April 11, 2007. This loan was in the amount of $36,000.00 and secured by the Cove Road Property. The Debtors used the third loan to fund an auction to sell the Cove Road Property. This loan matured on April 10, 2008. *Id.*

After the Debtors failed to satisfy the three loans, the Creditors commenced foreclosure proceedings in the Circuit Court of Somerset County as to the Cove Road Property and in the Circuit Court of Dorchester County as to the Taylors Island Property. *Id.* In order to protect their properties, the Debtors sought the protections of the

Bankruptcy Court.   They filed for bankruptcy and thereby stayed the foreclosure proceedings.[9]

On March 27, 2008, Ms. Sydnor initiated a Chapter 12 bankruptcy case,[10] asserting that she was a family farmer engaging in agricultural or commercial fishing.   This case represents the *fifth* time that Ms. Sydnor has filed an action for bankruptcy in this Court. Prior to this case, Ms. Sydnor filed for bankruptcy four times, in 1997, 1998, 1999, and 2003. All four previous bankruptcy cases were dismissed.   *See* Clerk's Evidence of Repeat Filings for Debtor Sydnor, Mar. 31, 2008, Case No. DWK-08-14229.   At least some of these cases were dismissed because of Ms. Sydnor's material default in plan payments before confirmation.   *Id.*   Mr. Clarkson initiated his Chapter 12 case on July 2, 2009.   This is his *fourth* bankruptcy case.   *See* Mem. of Decision Appointing Chapter 11 Trustee 6 n.4.

Both Mr. Clarkson's case and Ms. Sydnor's case were converted to Chapter 11 bankruptcy proceedings[11] when the Chapter 12 Bankruptcy Trustee discovered that neither of the Debtors qualified as a "family fisherman" for purposes of seeking relief under Chapter 12.   *See* Mot. to Dismiss for Failure to Qualify for Relief Under Chapter 12, Aug. 21, 2008, Case No. DWK-08-14229, ECF No. 34; Order Converting Chapter 12 Case to Chapter 11, Nov. 20, 2009, Case No. DWK-09-22084, ECF No. 50.   Although the Debtors engaged in commercial fishing operations for which they would qualify as "family

[9] The specific protection afforded the Debtors in this case was the Bankruptcy Code's automatic stay.   A bankruptcy petition operates as a stay of "the commencement or continuation . . . of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case."   11 U.S.C. § 362.

[10] Bankruptcy proceedings filed under Chapter 12, 11 U.S.C. §§ 1201 *et seq.*, are intended for "family farmers" and "family fishermen" who propose a plan for reorganization.

[11] Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101 *et seq.*, provides an individual or corporate debtor the opportunity to reorganize and pay off creditors over time.

fishermen," their debts, totaling over $1.8 million, exceeded the limits imposed by the Bankruptcy Code. *See* Mot. to Dismiss for Failure to Qualify for Relief Under Chapter 12, ¶ 4; 11 U.S.C. § 101(19A)(A) (2007) (amended 2010) (defining a family fisherman as an individual "whose aggregate debts do not exceed $1,642,500"). Thereafter Ms. Sydnor's case proceeded under Chapter 11 for more than three years, and Mr. Clarkson's for approximately two and a half years.

## II.    The Adversary Proceedings Filed by the Debtors

In connection with their bankruptcy petitions, the Debtors filed adversary proceedings challenging the validity of the three loans issued by the Creditors. They allege that the Creditors engaged in a series of deceptive and illegal loan practices. *See* Appellees' Br. 5. Specifically, they claim that the Creditors charged usurious interest rates; attempted to enforce a commercial balloon payment note rider even though the loan at issue was a residential loan; did not permit the Debtors to review loan documents until the time of closing; were not licensed to do business in Maryland; and made misrepresentations about the loans and attempted to defraud them in various ways. *Id.* at 5-6. The Debtors also allege that some of the loan certificates stated that the loans were for commercial purposes in contravention of Maryland law. *Id.*

Both parties' adversary proceedings were filed in reaction to the Creditors' foreclosure proceedings. On the same day that Ms. Sydnor filed a bankruptcy petition, she commenced an adversary proceeding by filing a complaint in the Bankruptcy Court. *See* Sydnor Adversary Proceeding, Case No. DWK-08-0217. Mr. Clarkson initiated his case

against the Creditors in the Circuit Court for Somerset County on May 29, 2009,[12] but when

he filed for bankruptcy about one month later the Creditors removed it to the Bankruptcy

Court.  *See* Clarkson Adversary Proceeding, Case No. DWK-09-467.  On February 11, 2011,

the Bankruptcy Court consolidated the two cases because they involved common questions

of law and fact.  *See* Consent Order of Consolidation, Case No. DWK-08-217, ECF

No. 111.

### III.    The Bankruptcy Court's Decision to Appoint a Chapter 11 Trustee

On February 17, 2010, the Creditors moved to appoint a Chapter 11 trustee or, in the

alternative, to convert the Debtors' bankruptcy cases to Chapter 7.  The Bankruptcy Court

held hearings on April 27 and May 6, 2010, and entered an order requiring appointment of a

Chapter 11 trustee on June 11, 2010.

The Bankruptcy Court thoroughly explained its reasons for finding cause to appoint a

trustee.  *See* Mem. of Decision Appointing Chapter 11 Trustee 12-18, 21-25.   In Mr.

Clarkson's Chapter 11 case, the court found that Mr. Clarkson (1) had failed to file the

required monthly operating reports and (2) was significantly delinquent in paying the fees

associated with his case.  *Id.* at 12-13.  The court also noted that Mr. Clarkson (3) had zero

income and no bank account and (4) had not filed a Chapter 11 plan.  *Id.* at 13-15.  These

findings led the court to conclude that Mr. Clarkson filed his bankruptcy case, "likely upon

the urging of Sydnor," in order to seek the protection of an automatic stay against the

Creditors' foreclosure proceedings.[13]  There was no effective reorganization "in progress or

---

[12] The docket number associated with Mr. Clarkson's action in the Circuit Court for Somerset County is 19C09013199.

[13] *Id.* at 13.  The automatic stay is described *supra* in note 9.

in prospect." *Id.* at 14.  Moreover, Mr. Clarkson (5) borrowed funds to pay real estate taxes on the Cove Road and Taylors Island Properties, but did not report this action to the Bankruptcy Court, violating 11 U.S.C. § 364.  *Id.* at 17-18.

Likewise, the Bankruptcy Court determined that there was ample cause to appoint a Chapter 11 trustee to supervise Ms. Sydnor's case.  The court found that Ms. Sydnor (1) had not paid the required fees associated with her case, *id.* at 21; (2) borrowed funds to pay real estate taxes on the Cove Road Property in violation of § 364, *id.* at 24; (3) inflated estimates of income generated from contracts with the U.S. Department of Agriculture, *id.* at 25; and (4) submitted pleadings prepared by an attorney without acknowledging the attorney's participation to the court or other parties in the case, *id.* at 24-25.

Even more egregious, the Bankruptcy Court found that Ms. Sydnor (5) had engaged in "dishonest or at the very least gross mismanagement" of her estate.  *Id.* at 21.  Over the course of four years while her case was pending, she made statements to the Bankruptcy Court that "grossly distorted by omission or commission the actual underlying fact."  *Id.*  In a particularly glaring instance, Ms. Sydnor assured the Bankruptcy Court that she had paid taxes on the Cove Road Property for the years 2006, 2007, and 2008.  Yet upon the court's further inquiry, she admitted that she had postdated a check with the amount to be paid for her outstanding tax obligations and did not have sufficient funds to pay it.  *Id.* at 22.  The Bankruptcy Court emphasized that Ms. Sydnor's shift from "absolute representations and subsequent qualified representations to the point of virtual reversal of the initial representation is unfortunately not atypical of the way Sydnor has presented facts to this court during this case."  *Id.* at 23.

At the hearing on the Creditors' motion to appoint a Chapter 11 trustee, or in the alternative to convert to Chapter 7, the United States Trustee argued that the Bankruptcy Court should convert the case. In Chapter 7, the Debtors' assets could be liquidated and the proceeds of the liquidation could be distributed to the creditors. The Trustee considered conversion appropriate because there was no ongoing business and therefore very little prospect of effective reorganization under a Chapter 11 Trustee. *See id.* at 26.

The Bankruptcy Court decided, however, that appointment of a Chapter 11 trustee was the appropriate remedy. The court explained that a trustee would use "independent judgment and good management" of the affairs of the Debtors' estate to maximize the Creditors' eventual recovery. *Id.* at 27. Acknowledging the unlikely prospect of reorganization, the Court stated that "it may be that the Chapter 11 Trustee after examination of the affairs of the estates will conclude that liquidation is the appropriate denouement for these cases but that remains to be seen." *Id.* Indeed, in the following year the Chapter 11 Trustee did conclude that liquidation of the Debtors' assets, through conversion of the cases to Chapter 7, was appropriate.

## IV.   The Bankruptcy Court's Decision to Dismiss the Bankruptcy Cases

On October 28, 2011, the Chapter 11 Trustee Michael G. Rinn ("Mr. Rinn" or the "Chapter 11 Trustee") filed a Motion to Convert the Case to Chapter 7 or Dismiss the Case, pursuant to 11 U.S.C. § 1112(b).[14] At a hearing held on December 14, 2011, the Debtors opposed the motion but argued that if the Court were inclined to grant it, then it should

---

[14] Section 1112(b) governs the procedure by which a court considers the request of a "party in interest" to have a case under Chapter 11 dismissed or converted to Chapter 7, "whichever is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1).

dismiss rather than convert the case.  Official Transcript 22:14-20, Case No. RDB-12-0328, ECF No. 5.  They explained that they preferred dismissal because it would allow them to control the litigation of their adversary cases, rather than giving a Chapter 7 trustee the ability to settle those claims with the Creditors.[15]

The Creditors, on the other hand, argued that they preferred conversion of the case to Chapter 7.  Because the Bankruptcy Court had previously found indicia of gross mismanagement by the Debtors, they felt that a decision to keep the case in bankruptcy, under the supervision of the court and a trustee, was more appropriate.  *See id.* 15:11-17.

It is important to note that both the United States Trustee and the Chapter 11 Trustee supported conversion of the cases to Chapter 7.  *Id.* 5:22-24; 13:5-19. Mr. Rinn explained his reasons in detail.  First, he argued that these cases were not appropriate for Chapter 11, because the Debtors had only two assets and no other income to fund a plan of reorganization, and they owed $4,000 in administrative fees to the United States Trustee.  *Id.* 10:20-11:11.  Mr. Rinn then opined that conversion, rather than dismissal, would be in the best interests of the Creditors and the Debtors.  *See id.* 13:9-19.  Dismissal of the case would only lead the Debtors to return to the Bankruptcy Court; but if the cases were converted to Chapter 7, he asserted that the Creditors would finally be paid and the Debtors would be granted a discharge after liquidation.  *Id.* 13:5-19.

---

[15] Official Transcript 25:1-10.  Counsel for the Debtors explained as follows: "And I think for [the Debtors], more than anything else they want justice.  They want to have a day in court.  They want to be heard on these issues, as opposed to having . . . the defendants in those cases end up getting everything their hearts desire.  They get the properties. They get a resolution regarding these adversarial cases. And my clients never even see a courtroom on them."  *Id.*

At the end of the hearing, the Bankruptcy Court ruled from the bench that it had found cause to either convert or dismiss the case, and that the Debtors' cases should be dismissed.  *See id.* 35:5-37:7.  The Bankruptcy Court also deconsolidated the Debtors' adversary proceedings, dismissed Ms. Sydnor's adversary case for lack of jurisdiction, and remanded Mr. Clarkson's adversary case to the Circuit Court for Somerset County.  Finally, the Court imposed a one-year bar against either Debtor's attempt to refile for bankruptcy. *See id.* 42:19-43:23.

The decision whether to dismiss or convert the case was, as the Bankruptcy Court put it, "the real fight, the real decision."  *Id.* 38:4-5.  In order to make this determination, the Bankruptcy Court explained that it was required to "fashion the remedy to the best interest of the estate, the creditors, and perhaps the debtor."[16]  The Court remarked that although Mr. Rinn, the Chapter 11 Trustee, had provided his services without any compensation for more than a year, § 1112(b) precluded him from considering the interests of the trustee.[17]

The Bankruptcy Court went on to explain that the Debtors disapproved of the way that Mr. Rinn was handling the disposition of their adversary cases.  Because Mr. Rinn had previously tried to negotiate a plan to liquidate the properties and settle the adversary claims with the Creditors, the Debtors believed that Mr. Rinn was underestimating the merits of their claims.  *See id.* 41:10-14.  A state court action, the Bankruptcy Court stated, is therefore

---

[16] Official Transcript 38:6-8.  As discussed in more depth *infra*, § 1112(b)(1) states that a court should choose the remedy that is in "the best interests of creditors and the estate."

[17] The Bankruptcy Court explained, "It is interesting that the best interest of the trustee is simply not enumerated in the statute as one of the factors I am supposed to consider.  And I cannot graft it on."  Official Transcript 38:16-18.

"not an inappropriate forum" for the resolution of the Debtors' adversary claims. *Id.* 41:17-18.

Moreover, the Court found it "incontrovertible" that the only creditors who would be affected by the outcome in this case were the Creditors who participating in the hearing. *Id.* 41:19-23. "There is not going to be a waterfall of money that flows to unsecured creditors," the court explained, "[a]nd there are very few such unsecured creditors." *Id.* 41:23-25.

The Bankruptcy Court also predicted that if the cases were converted to Chapter 7, the trustee would negotiate with the Creditors an outcome that resulted in the "extinction of the causes of action that the debtor[s] assert." *Id.* 42:11-12. The Debtors would likely object to any motion to approve this settlement agreement, and "really little would be resolved until this was again tried basically as we are today." *Id.* 42:15-16. For this reason, the Bankruptcy Court considered conversion of the cases an inefficient outcome. Instead, the Court decided to dismiss the Debtors' bankruptcy cases under § 1112(b).

The Creditors filed a notice of appeal from this set of decisions on February 2, 2012 (Case No. RDB-12-0328, ECF No. 1) and submitted their Appellants' Brief on March 2, 2012 (Case No. RDB-12-0328, ECF No. 7). They argue that the Bankruptcy Court erred as a matter of law when it considered the best interests of the Debtors and the appropriate forum for the Debtors' adversary claims in deciding to dismiss the Debtors' bankruptcy cases. Moreover, the Creditors claim that the Bankruptcy Court made clearly erroneous factual findings regarding the parties to be affected by the outcome of the Debtors' claims and the possibility that a trustee in Chapter 7 would attempt to settle the Debtors' claims.

Finally, the Creditors claim that the Bankruptcy Court failed to give proper weight to certain factors that weighed in favor of conversion.   In response, the Debtors assert that the Bankruptcy Court properly applied § 1112(b) when it determined that dismissal was the appropriate remedy.   Moreover, the Debtors maintain that the Bankruptcy Court's factual predictions regarding distributions to the unsecured creditors and Chapter 7 settlement negotiations were supported by the evidence and should not be overturned.

## STANDARD OF REVIEW

This appeal is brought pursuant to Rule 8001(a) of the Federal Rules of Bankruptcy Procedure, which permits an appeal as of right from a judgment, order, or decree of a bankruptcy judge to a district court as authorized by 28 U.S.C. § 158(a)(1).   On appeal from the Bankruptcy Court, this Court acts as an appellate court and reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law *de novo*.   *In re Merry-Go-Round Enterprises, Inc.,* 400 F.3d 219, 224 (4th Cir. 2005); *In re Kielisch,* 258 F.3d 315, 319 (4th Cir. 2001).   Relevant to this appeal, the factors that a bankruptcy court considers in deciding whether to grant a motion to convert a case under 11 U.S.C. § 1112 "are matters of law which we review *de novo*."   *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window Inc.)*, 14 F.3d 240, 242 (4th Cir. 1994).

A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948).   An abuse of discretion standard applies in the review of the Bankruptcy Court's ultimate application of law to fact.   "An abuse of discretion exists where the [lower court's] decision

rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *In re Marvel Entertainment Grp., Inc.,* 140 F.3d 463, 470 (3d Cir. 1998) (quoting *ACLU v. Black Horse Pike Reg'l Bd. of Educ.,* 84 F.3d 1471, 1476 (3d Cir. 1996)) (internal quotation omitted).  The district court may affirm, modify, or reverse a bankruptcy judge's order, or remand with instructions for further proceedings.  *See* Fed. R. Bankr. P. 8013; *see also In re White,* 128 Fed. Appx. 994, 999 (4th Cir. 2005); *Suntrust Bank v. Johnson,* 2006 U.S. Dist. LEXIS 87622, at *6, 2006 WL 3498411 (D. Md. Dec. 4, 2006).

## ANALYSIS

The Creditors' arguments on appeal center on the issue of whether the Bankruptcy Court erred when it decided that dismissal—not conversion—was in the best interests of creditors and the estate.  Two of the Creditors' claims concern factual findings, whereas the rest challenge the court's ultimate legal determination.  This Court will first address the Creditors' challenge to the Bankruptcy Court's factual findings.  Then it will analyze the Creditors' main challenge to the dismissal of the Debtors' cases.

## I.      The Bankruptcy Court's Findings of Fact

In deciding to dismiss the Debtors' cases, the Bankruptcy Court made several factual findings.  The Creditors challenge two of them as clearly erroneous.  To overturn factual findings, this Court must be "left with a firm and definite conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. at 395.  Otherwise, a district court must give "great deference to the bankruptcy court with respect to findings of fact." *In re Frushour*, 433 F.3d 393, 406 (4th Cir. 2005).

First, the Creditors challenge the Bankruptcy Court's finding that there were very few unsecured creditors and that they would not be receiving a "waterfall of money" if the Debtors' cases remained in bankruptcy.  Official Transcript 41:19-25.  The Creditors assert that this finding was clearly incompatible with the factual record, in which the Debtors had maintained that their sole assets—the Cove Road Property and Taylors Island Property— were quite valuable.  Appellants' Br. 20-21.  The Bankruptcy Court, in its opinion appointing a Chapter 11 trustee, stated that Ms. Sydnor's schedules asserted a market value for the Cove Road Property of $1,300,000 (encumbered by the Creditors' $750,000 claim) and a market value for the Taylors Island Property of $2,475,000 (encumbered by the Creditors' $1,600,000 claim).  *See* Mem. of Decision Appointing Chapter 11 Trustee 3.  Assuming these properties were liquidated under Chapter 11 and sold at prices similar to those the Debtors assert, the Creditors believe the unsecured creditors would receive some distribution or even be paid in full.  Appellants' Br. 20-12.  For this reason, they assert the Bankruptcy Court's contrary finding was clearly erroneous.

When the Bankruptcy Court predicted that the unsecured creditors were unlikely to receive a payout, it referred to the Chapter 11 Trustee's similar conclusion that the unsecured creditors would not benefit from distributions after liquidation.  At the hearing to determine whether to convert or dismiss the case, Mr. Rinn stated that this case was "truly a two-party fight."  *See* Official Transcript 6:11.  Moreover, the Bankruptcy Court explained that he was basing his finding on the trustee's opinion that unsecured creditors would not

receive payment.[18]   Considering that the Bankruptcy Court was making a prediction based on its understanding of the record as well as on the opinion of the Chapter 11 Trustee, this Court is not left with a firm and definite conviction that the Bankruptcy Court made a mistake in predicting that the unsecured creditors would not receive distributions.

The Creditors also dispute the Bankruptcy Court's finding that, if the Debtors' bankruptcy cases were converted to Chapter 7, the trustee would likely negotiate a settlement agreement in which the Creditors' claims would be reduced and the Debtors' causes of action would be extinguished.   Official Transcript 42:6-18.   Because the Debtors would probably object to a motion to approve this settlement, the court considered this outcome not "an efficient way to go about it."   *Id.* at 42:12-17.   The Creditors assert that the court's prediction on this point was unsupported by the evidence.   Moreover, courts encourage settlements in bankruptcy cases.   *See, e.g., United States ex rel. Rahman v. Oncology Assocs., P.C.,* 269 B.R. 139, 149 (D. Md. 2001) (stating, in the bankruptcy context, that "[s]ettlements are to be encouraged, and it should not be the intention of a court to discourage settlements").

As with the Creditors' first challenge to the Bankruptcy Court's factual predictions, this Court is not left with a firm and definite conviction that the Bankruptcy Court made a mistake.   The Bankruptcy Court was aware of the Chapter 11 Trustee's earlier proposed Chapter 11 plan, in which he intended to settle the Debtors' adversary proceedings.   *See* Official Transcript 41:10-18.   The contents of this plan likely informed the court's opinion as to how the Debtors' cases would be resolved in Chapter 7.   Furthermore, the fact that courts

---

[18] *See id.* 41:19-25.   Additionally, in a Redlined Amended Plan of Liquidation submitted in July 2011, Mr. Rinn predicted that a proposed liquidation plan would not result in distribution of claims to the unsecured creditors.   *See* Redlined Amended Plan, Case No. RDB-12-0328, ECF No. 1-23, p. 2.

generally encourage settlement of bankruptcy proceedings only bolsters the Bankruptcy Court's prediction that in these Debtors' cases settlement was likely.  The Creditors do not suggest that the Bankruptcy Court's prediction is precluded by the facts of the case; they only contend that such a finding was not based on any evidence.  Because the Bankruptcy Court is entitled to "great deference" with respect to findings of fact, *In re Frushour*, 433 F.3d at 406, and because there are facts supporting its prediction, this Court does not find that the Bankruptcy Court's factual finding as to a possible Chapter 7 settlement is clearly erroneous.

## II.    The Bankruptcy Court's Determination of the Best Interests of Creditors and the Estate

Although this Court finds that the Bankruptcy Court's findings of fact are not clearly erroneous, this Court applies a *de novo* review with respect to the conclusions of law that must follow those findings of fact.  Reviewing *de novo* the factors on which the Bankruptcy Court relied to reach its decision, this Court finds that the court erred as a matter of law when it dismissed the Debtors' cases, rather than converting those cases to a Chapter 7 proceeding and liquidation of the Debtors' assets, specifically the Cove Road Property and the Taylors Island Property.

### A.  Procedure under 11 U.S.C. § 1112

The Bankruptcy Court, applying 11 U.S.C. § 1112, found that the Debtors' cases should be dismissed rather than converted to Chapter 7.  Section 1112(b) governs the procedure by which a bankruptcy court considers the request of a party in interest to have a case filed under Chapter 11 converted to Chapter 7 or dismissed:

> Except as provided in paragraph (2) and subsection (c),[19] on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).  Though the Bankruptcy Code does not identify factors for a bankruptcy court to consider when determining the remedy in the "best interests of creditors and the estate," the authoritative bankruptcy treatise *Collier on Bankruptcy* ("*Colliers*") provides guidance.  *Colliers* explains that the "parties will be the best judge of their own interests, and if all the parties agree on one course of action, the court should accommodate their desire." 7 COLLIER ON BANKRUPTCY § 1112.04[7] (citing cases).  However, a court should not simply rule for the majority if the parties disagree.  *Id.*  In that case, the court "must choose the alternative that would be most advantageous to the parties and the estate as a whole."  *Id.* (citing cases).

In fashioning the appropriate remedy, *Colliers* lists the following ten factors as criteria that a court may consider: (1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal; (2) whether there would be a loss of rights granted in the case if it were dismissed rather than

---

[19] Section 1112(c) bars a court from converting a case to Chapter 7 if the debtor is a "farmer" and he does not request conversion.  *See* 11 U.S.C. § 1112(c).  The Debtors in this case are not farmers, as defined by the Bankruptcy Code, because they did not receive more than 80 percent of their gross income during the relevant taxable years from a "farming operation."  *See* 11 U.S.C. § 101(20).  At most, Ms. Sydnor generated 71% of her gross income from farming operations in 2007.  *See* Mem. of Decision Appointing Chapter 11 Trustee 3-4; Correspondence, Case No. RDB-12-0326, ECF No. 19, 3 n.4.   In 2008, Mr. Clarkson generated zero income.  *See* Mem. of Decision Appointing Chapter 11 Trustee 8.

converted; (3) whether the debtor would simply file a further case upon dismissal; (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of the creditors; (5) in assessing the interests of the estate, whether conversion or dismissal would maximize the estate's value as an economic enterprise; (6) whether any remaining issues would be better resolved outside the bankruptcy forum; (7) whether the estate consists of a "single asset;" (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests; (9) whether a plan had been confirmed and whether any property remains in the estate to be administered; and (10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns." *Id.* (citing cases).

The United States Court of Appeals for the Fourth Circuit considered an appeal of a bankruptcy court's decision to dismiss rather than convert a case in *Rollex Corp. v. Associated Materials, Inc.*, 14 F.3d 240. In *Rollex*, seven creditors had moved the bankruptcy court to dismiss the Chapter 11 proceeding on the ground that no reorganization plan could succeed, and the eighth creditor—the largest creditor of the debtor—had requested conversion of the case to Chapter 7. *Id.* at 241. At the first stage in the analysis, the bankruptcy court found that the debtor had acted in bad faith; thus cause existed to either convert or dismiss the case. *Id.* at 242. Then, as in the case before this Court, the bankruptcy court decided that dismissal was the appropriate remedy. *Id.* The court came to this conclusion because "the consensus of a majority of [the debtor's] creditors" was in favor of dismissal, whereas only one creditor preferred conversion. *Id.*

In reviewing the bankruptcy court's decision, the Court of Appeals for the Fourth Circuit explained that though the "decision not to grant a motion to convert under 11 U.S.C. § 1112(b) is discretionary . . . the factors to be considered in entering such a motion are matters of law which we review *de novo*." *Id.* at 242. After finding cause to either dismiss or convert a case, a bankruptcy court "must ascertain the impact on the creditors and the estate of each of the options." *Id.* at 243. This analysis, the appellate court found, must include a comparison of the "creditors' interests in bankruptcy with those they would have under state law." *Id.* After setting out this framework, the appellate court reviewed *de novo* the factor on which the bankruptcy court relied—that a majority of creditors requested dismissal—and compared the interests of the creditors in bankruptcy with those they would have under state law. The court ultimately vacated the dismissal order, explaining that "had [the court] taken into account the interests of *all* the creditors, the court would have likely concluded . . . that the interests of the creditors would have been better served by conversion of the Chapter 11 proceeding to a Chapter 7 proceeding." *Id.* at 243. By "yielding to the majority interest," the bankruptcy court had failed to consider the best interests of all the creditors and therefore had erred as a matter of law. *Id.*

### B. The Bankruptcy Court's Consideration of the Best Interest of the Debtors

At the December 14, 2011 hearing on the motion to dismiss or convert the case, the Bankruptcy Court stated that it was considering the remedy in the best interests of "the estate, the creditors, and perhaps the debtor." Official Transcript 38:6-8. Because the Creditors, the United States Trustee, and the Chapter 11 Trustee argued for conversion of the case, and no other creditor supported dismissal, the Creditors argue that the Bankruptcy

Court considered, at least in part, the interests of the Debtors when it decided that dismissal was the appropriate remedy.  In doing so, they claim that the Bankruptcy Court erred as a matter of law because § 1112(b) permits a court to consider only the best interests of creditors and the estate.

At least one bankruptcy court has addressed whether the interests of the debtor have any bearing on a court's decision to convert or dismiss under § 1112(b).  In *In re Staff Investment, Co.*, 146 B.R. 256, 261 (Bankr. E.D. Cal. 1992), the Bankruptcy Court for the Eastern District of California explained that a court should not consider a debtor's interests unless they coincide with the best interests of the estate:

> The best interest of the debtor is *not* specifically a factor under section 1112(b). The Congress omitted specific reference to the interest of the debtor when it required focus on "best interest of creditors and the estate."

> Is omission of the interest of the debtor from the statutory language significant or just sloppy draftsmanship? The language of related provisions in the same statute shows that it is significant. Under the abstention provision, a case can be dismissed if the "interests of creditors and the debtor would be better served" by such actions. 11 U.S.C. § 305(a). The Congress knew how to make the debtor's interest a factor in section 1112(b) and chose not to do so.

> The debtor's interests do enter the equation, but only insofar as they coincide with interests of the estate. Those interests, it need hardly be said, do not always coincide.

*Id.* at 261 (first citation omitted).  At the hearing on October 17, 2012, counsel for the Debtors Chad Edward Cos ("Mr. Cos") acknowledged that there is no legal authority to support a court's consideration of the debtor's interest under § 1112.

The record certainly suggests that the Bankruptcy Court did consider the Debtors' interests in fashioning its remedy.  Indeed, the record shows that the interests of the Debtors—in particular, a concern that the Debtors' adversary proceedings might not receive

proper treatment if the cases were converted to Chapter 7—was considered in granting a dismissal in this case. During the December 14, 2011 hearing on the Chapter 11 Trustee's motion to convert or dismiss, Mr. Cos and Judge Keir discussed the problem that conversion posed to the Debtors. Mr. Cos suggested that conversion "could [not] be any more adverse to [the Debtors] insofar as they would not only lose the property, but they would also lose their adversarial claims that are very important to them." Official Transcript 21:5-7. In response, Judge Keir contemplated the alternative option: "[W]ould that not tend [to] indicate that if the cases were dismissed, that would resolve in favor of the debtors this problem that they perceive? . . . The litigation would be theirs to pursue." *Id.* 22:6-10. Later the Bankruptcy Court remarked, in announcing its decision to dismiss the cases, that

> what the Court is doing is what the debtor has asked . . . [t]hat is, that the Court not convert to Chapter 7, not place this litigation in the hands of the Chapter 7 trustee, as the only party, and rather allow them to be the party that prosecutes the litigation in the state court through dismissal of the bankruptcy.

*Id.* 40:13-18. A careful review of the record in this case compels the conclusion that the Bankruptcy Court, in reaching its decision, took into consideration and relied on the Debtors' interest in having control over the litigation of their adversary proceedings.

The Debtors argue that the Bankruptcy Court properly considered the factors enumerated in *Colliers* to reach its decision. Specifically, the Debtors point to the sixth *Colliers* factor: "whether any remaining issues would be better resolved outside the bankruptcy forum." 7 COLLIER ON BANKRUPTCY, § 1112.04[7]. While the appropriate forum for the Debtors' adversary proceedings was certainly a factor the Bankruptcy Court could consider, the court's focus went beyond its opinion that a state court was "not an inappropriate forum." Official Transcript 41:17-18. Instead, the court took an interest in

22

the Debtors' complaint that the Chapter 11 Trustee had undervalued the merits of their litigation and that a Chapter 7 trustee would likely do the same. *See* Official Transcript 22:2-13. Moreover, the court stated that it was heeding the Debtors' request to "not place this litigation in the hands of the Chapter 7 trustee." *See id.* 40:13-16. When the Bankruptcy Court considered the "problem that [the Debtors] perceive," *id.* 22:8-9, it contravened the explicit directive in § 1112 to consider only the interests of creditors and the estate.

### C. The Bankruptcy Court's Failure to Compare the Creditors' Interests in Bankruptcy with Those They Would Have Under State Law

The Creditors also contend that the Bankruptcy Court, while heavily weighing the interests of the Debtors, did not properly assess certain factors that compelled dismissal. Primarily, the Creditors argue that because all the parties whose interests were to be considered under § 1112 supported conversion, the Bankruptcy Court should have accommodated their request. In addition, the Creditors put forth several factors that they argue should have compelled conversion: (1) that the Debtors submitted themselves to the jurisdiction of the Bankruptcy Court; (2) that the Debtors' bankruptcy cases had been pending for many years; (3) that the Bankruptcy Court found in its Memorandum of Decision Appointing a Chapter 11 Trustee that a trustee could pursue the claims against the Creditors to the benefit of all creditors; and (4) that a trustee's supervision was needed because Ms. Sydnor was dishonest or at least had grossly mismanaged the estate. Appellants' Br. 22-23.

In *Rollex*, the Court of Appeals for the Fourth Circuit held that the "best interests of creditors" inquiry "cannot be completed without comparing the creditors' interests in bankruptcy with those they would have under state law." 14 F.3d at 243. Several factors

cited by the Creditors show that their interests would be better served by keeping the Debtors' cases in bankruptcy than by dismissing the case and having them resort to state law. If the bankruptcy court had considered these factors, then it likely would have concluded that conversion was in the creditors' best interest.

The first factor that enters this analysis is the Bankruptcy Court's previous decision to appoint a Chapter 11 trustee. The court decided that a trustee's supervision was needed because, among several other reasons, Ms. Sydnor was dishonest or at least grossly mismanaging the affairs of her estate. *See* Mem. of Decision Appointing Chapter 11 Trustee 21. Lack of trust in the debtor is an important factor in the comparison of the creditors' interests in bankruptcy with those under state law, since dismissal of the cases would grant the Debtors, who were previously found to be mismanaging their estate, control over their case. Indeed, *Colliers* lists as a factor for consideration "whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests." 7 COLLIER ON BANKRUPTCY, § 1112.04[7]. The Creditors argue that they are in need of a Chapter 7 case, especially the supervision of a trustee and the Bankruptcy Court, to protect their interests. Their position is well-taken, considering the the Bankruptcy Court's numerous findings of cause to appoint a Chapter 11 Trustee.

Another crucial factor in determining the best interests of creditors and the estate is the length of time that the Debtors' cases were pending in bankruptcy. In this case, the Debtors had sought the protection of the Bankruptcy Court for nearly four years. The Debtors argue that dismissal would not adversely affect the Creditors' interests, because a trial date of December 5, 2012, is already set for state court adjudication of the adversary

claims.  However, that trial could last for much longer if the outcome were appealed.  On the other hand, conversion to Chapter 7 has the potential of creating value for the estate and creditors through "an orderly liquidation of the debtor's assets" and "a prompt conclusion to the bankruptcy process."  *In re Babayoff*, 445 B.R. 64, 82 (Bankr. E.D.N.Y.).  After four years, the Creditors seek a prompt resolution of this case, and that outcome could be better secured in the bankruptcy forum.

Finally, it is worth noting two additional factors that suggest that conversion was in the creditors' and estate's best interests.  In this case, the Creditors, the Chapter 11 Trustee, who represented the interests of the estate, and the United States Trustee all supported conversion of the cases to Chapter 7.  *Colliers*, in its discussion of § 1112(b), states that in determining the best interest of creditors and the estate, "[p]resumably, the parties will be the best judge of their own best interest, and if all of the parties agree on one course of action, the court should accommodate their desire."  7 COLLIER ON BANKRUPTCY, § 1112.04[7].  Furthermore, the Bankruptcy Court stated in its Memorandum of Decision Appointing a Chapter 11 Trustee that "it may be that the Chapter 11 Trustee after examination of the affairs of the estates will conclude that liquidation is the appropriate denouement for these cases but that remains to be seen."  Mem. of Decision Appointing Chapter 11 Trustee 27.  The Chapter 11 Trustee did in fact conclude that the appropriate denouement was liquidation.  This position was well supported by several factors indicating that the interests of creditors and the estate would be better served by conversion of the cases to Chapter 7 than by dismissal: the Debtors had been dishonest or grossly

mismanaging their estate, their cases had been pending for several years, and all the parties whose interests are relevant for purposes of § 1112 requested conversion.

If the Bankruptcy Court had not considered the interests of the Debtors—and instead had compared the creditors' interests in bankruptcy with those they would have under state law—the court would likely have determined that conversion was the appropriate remedy.  Accordingly, the Bankruptcy Court erred as a matter of law in its decision to dismiss the Debtors' cases rather than convert them to Chapter 7.

## CONCLUSION

For the reasons set forth above, the Bankruptcy Court erred in its decision to dismiss rather than convert the Debtors' Chapter 11 cases.  Accordingly, the Bankruptcy Court's decision is REVERSED and REMANDED with instructions to enter an Order converting the Debtors' bankruptcy cases to Chapter 7, which will result in the liquidation of the Debtors' assets.  The Bankruptcy Court entered four related Orders to account for various effects of the Dismissal Order.  Because the Dismissal Order is overturned, these four other Orders should not remain in effect. Accordingly, the Deconsolidation Order, Adversary Dismissal Order, Remand Order, and Order Imposing Bar to Refiling are also REVERSED.

A separate Order follows.


Dated: October 26, 2012                                    /s/_____

                                                          Richard D. Bennett
                                                          United States District Judge